UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| APRIL M. WOOD, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | CIVIL ACTION NO. |
| | * | |
| UNITED STATES | * | |
| | * | |
| Defendant | * | |

**COMPLAINT**

Plaintiff, April Wood ("Ms. Wood"), through counsel, alleges as follows:

**I.        JURISDICTION**

1.        This Complaint against the United States of America is brought under the Federal

Tort Claims Act for negligent medical care by employees and agents of the Togus Veterans

Administration Medical Center ("VAMC") which caused April M. Wood to suffer permanent

injuries, damages, losses and disability.

2.        April Wood is a resident of Gardiner, County of Kennebec, State of Maine, and an

honorably discharged veteran of the United States Army.

3.        VAMC is a health care center organized under the United States Department of

Veterans Affairs.   Each medical provider who cared for April Wood at VAMC, including Thomas

Franchini, DPM, was at all relevant times an employee or agent of VAMC, acting within the scope

of his or her employment or authority as an agent. The United States of America is therefore the

appropriate party Defendant.

4.        This Court has original jurisdiction of this action pursuant to 28 USC §1331 and

under 42 USC §233 and under the Federal Tort Claims Act, 28 USC §§1346(b), 2401(b), and 2671-2680.

5.     An attorney representing the Plaintiff timely submitted to the U.S. Department of Veterans Affairs a Notice of Claim Form ("Standard Form 95"), which was received by that Department on November 19, 2013.

6.     The U.S. Department of Veterans Affairs issued a letter dated May 2, 2014 denying Plaintiff's administrative claim and, thus, acknowledging that administrative remedies have been exhausted.

7.     Venue is proper in the District of Maine, pursuant to 28 USC §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the District. This action is being filed in Bangor, pursuant to Rule 3(b) of the Rules of the United States District Court for the District of Maine, because a substantial part of the events or omissions giving rise to the claim occurred in Kennebec County.

## II.     GENERAL ALLEGATIONS

8.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

9.     Plaintiff injured her left ankle, left foot, and left leg in an Army training exercise in 2004, when she fell from a rope approximately 20 feet above the ground.

10.     Plaintiff was honorably discharged from the Army on or about September 24, 2004.

11.     Plaintiff's injuries were treated by the VAMC from 2005 to the present, through and including a left leg amputation.

12.     Plaintiff's left leg, ankle, and foot injuries were treated by Thomas Franchini, DPM, a podiatrist.

13.     At all relevant times Dr. Franchini was a podiatrist employed by VAMC.

14.     At all relevant times, Dr. Franchini was a podiatric surgeon employed by VAMC.

15.     Plaintiff first saw Dr. Franchini for treatment and care of her injuries on or about May 1, 2006 at VAMC. Dr. Franchini planned to do a left ankle surgery on Plaintiff to address her ankle injuries.

16.     On September 13, 2006, Dr. Franchini conducted a fusion of Plaintiff's left ankle at VAMC.

17.     Plaintiff was told by Dr. Franchini that she had normal post-operative mobility restrictions and normal post-operative pain after the September 13, 2006 surgery.

18.     Initially, Plaintiff's experienced a reduction of pain after post-surgical healing occurred; however, pain symptoms began to return.

19.     On July 5, 2007, Plaintiff told Dr. Franchini that she had pain in her left ankle and left foot and had difficulty walking.

20.     On that date Dr. Franchini told Plaintiff that the fusion of the left ankle he had performed on September 13, 2006 had been "successful," that her ankle had been appropriately fused and that any problems she was experiencing were due to her own degenerative joint disease or her own anatomy.

21.     Dr. Franchini also specifically told Plaintiff, after the September 13, 2006 surgery, that her bone was porous or mushy and that was the reason for her ongoing problems.

22.     Dr. Franchini represented to Plaintiff that her foot appropriately fused.

23.     Plaintiff believed her physician, Dr. Franchini.

24.     On December 18, 2009, Plaintiff consented to a left subtalar joint fusion performed by Dr. Franchini, because Dr. Franchini had told that she needed surgery on the left subtalar joint

because of degenerative joint disease.

25.     Dr. Franchini affirmatively told Plaintiff that she had osteopenia and that the osteopenia was a cause of her ongoing problems.

26.     After the December 18, 2009 left subtalar joint fusion performed by Dr. Franchini, Dr. Franchini told Plaintiff that she should wear special rocker bottom shoes to help her healing.

27.     After the December 18, 2009, surgery, Plaintiff continued to pursue the conservative measures prescribed by Dr. Franchini, and continued to experience pain which she thought was due to the condition of her bones or anatomy, as Dr. Franchini had told her.

28.     On November 28, 2011, Plaintiff was first diagnosed with the "beginning of RSD."

29.     "RSD" is Reflex Sympathetic Dystrophy. It is otherwise known as CRPS or Chronic Regional Pain Syndrome.  RSD (or CRPS) is a disorder of the sympathetic nervous system that is characterized by chronic, severe pain.

30.     In 2012, Plaintiff attempted conservative measures to address her RSD (CRPS).

31.     In 2012, Plaintiff's RSD (CRPS) in her left leg, left ankle, and left foot became so painful and so extremely disabling that a below knee amputation was recommended to her by healthcare providers at VAMC.

32.     On August 28, 2012, Plaintiff underwent a below knee amputation at VAMC. The amputation was performed by Dr. Butler and Dr. Curtis.

33.     The surgical note for the August 28, 2012 below knee amputation states that the amputation was indicated because of "severe, unrelenting, chronic pain and ankle deformity due to trauma."

34.     Plaintiff was told that her RSD (CRPS) and need for a below knee amputation was due to the trauma that she originally sustained while still in the military, along with anatomical

4

problems and/or soft or mushy bone.

35.     In February 2013, Plaintiff received an unsolicited phone call from VAMC inviting her to a meeting concerning her course of care at the VAMC.

36.     Prior to the unsolicited phone call received in February 2013 regarding her care, Plaintiff was unaware that any review of her care had been completed.

37.     Prior to the unsolicited phone call received in February 2013, Plaintiff was unaware of any need for a review of her course of care, given that she was told her pain condition and below the knee amputation were due to the trauma she had sustained in the original fall, the complexity of her injury, her soft/mushy bone, osteopenia, osteoporosis, degenerative joint disease and other anatomical reasons.

38.     On February 16, 2013, Plaintiff attended a meeting at VAMC that included her husband, Jason Wood, Director Ryan Lilly of VAMC, and Dr. Timothy Richardson of VAMC.

39.     At the meeting at VAMC on February 16, 2013, Plaintiff was told, for the first time, that Dr. Franchini had provided negligent care.

40.     At the February 16, 2013 meeting at VAMC, Plaintiff was made aware, for the first time, that there was an iatrogenic cause of her August 28, 2012 below the knee amputation and related injuries.

41.     VAMC authored a document called "Institutional Disclosure of Adverse Event," describing VAMC's own investigation of Dr. Franchini and the February 16, 2013 meeting with Plaintiff.

42.     In the Institutional Disclosure of Adverse Event, VAMC unequivocally admits that Dr. Franchini/VAMC provided "sub-standard care" to Plaintiff.

43.     VAMC unequivocally admits that the sub-standard care provided to Plaintiff

caused her below knee amputation.

44.     VAMC unequivocally admits that Dr. Franchini provided sub-standard medical care to Plaintiff in and around the September 13, 2006 surgery because Dr. Franchini fused her ankle/foot with plantar flexion.

45.     VAMC unequivocally admits that Dr. Franchini provided sub-standard care to Plaintiff in and around the September 13, 2006 surgery because Dr. Franchini mal-positioned Plaintiff's foot/ankle.

46.     VAMC unequivocally admits that Dr. Franchini provided sub-standard medical care to Plaintiff in and around the September 13, 2006 surgery because Dr. Franchini used an inappropriate surgical approach in the September 13, 2006 left ankle surgery.

47.     VAMC unequivocally admits that the subtalar joint fusion performed by Dr. Franchini on December 18, 2009 was sub-standard.

48.     VAMC unequivocally admits that the subtalar joint fusion performed by Dr. Franchini on December 18, 2009 was sub-standard because there was poor fixation.

49.     VAMC unequivocally admits that Dr. Franchini provided sub-standard care to Plaintiff in and around the December 18, 2009 surgery because Dr. Franchini inappropriately placed compression screws.

50.     VAMC unequivocally admits that Dr. Franchini provided sub-standard care to Plaintiff in and around the December 18, 2009 surgery because the screws placed during that surgery were severely posterior with minimal purchase contributing to the failed fusion.

51.     VAMC unequivocally admits that Dr. Franchini provided sub-standard care to Plaintiff because Dr. Franchini inappropriately placed Plaintiff in an equinus position.

52.     VAMC unequivocally admits that the sub-standard medical care by Dr. Franchini

"ultimately led to a left below the knee amputation in August 2012."

53.    VAMC unequivocally admits that Plaintiff had the "right to file an administrative tort claim" against VAMC.

54.    VAMC provided Plaintiff with materials to file a valid FTCA tort claim against VAMC.

55.    The Institutional Disclosure of Adverse Event record authored by VAMC states as follows:

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT

DATE OF NOTE: AUG 02, 2013@15:49 ENTRY DATE: AUG 02, 2013@15:49:20

AUTHOR: RICHARDSON, TIMOTHY EXP COSIGNER:

URGENCY: STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: Aug 2,2013@13:00

Place of Discussion (Reason for any delay in the disclosure): Disclosure

performed in Director's office following the 2-16-13 consulting

Podiatrist's exam that confirmed the need for disclosure.

Names and identity of those present: Veteran, her husband Jason, Director Ryan

Lilly, and Dr. Timothy Richardson.

Discussion points of the adverse event:

Veteran has history of complex left ankle fracture sustained in the military

leading to severe degenerative joint disease of the left ankle.

S/P fusion of the left ankle 9/13/06 by Dr. Franchini

S/P left subtalar joint fusion 12/18/09 by Dr. Franchini

S/P redo attempt of left STJ fusion with cadaver graft at VA Boston 9/22/10

S/P left below the knee amputation at Togus by Dr's Butler and Curtis for

intractable pain from complex regional pain syndrome (CRPS)

Although the 2006 left ankle fusion surgery by Dr. Franchini led to a fused

ankle she felt as though she was always walking with a "high heel"; the

fusion had resulted in plantar flexion of the foot. The left subtalar joint fusion

performed by Dr. Franchini also did not help her pain and there was a revision

attempted at VA Boston. This also was not helpful and she ultimately required a

left below the knee amputation because of intractable pain secondary to CRPS.

Probable sub-standard care:

a. The initial left ankle fusion surgery performed in 2006 by Dr. Franchini was

unsuccessful because the ankle was fused with plantar flexion; this malpositioning

was a factor in the development of her CRPS.

b. The choice of surgical approach for the left ankle surgery was probably

substandard since a lateral fibular sacrificing approach rather than the

anterior approach that was used may have mitigated additional neurological and

pain problems. If bone quality was an issue, as indicated by Dr. Franchini, an

external fixator could have been used.

c. The subtalar joint fusion performed by Dr. Franchini in 2009 was sub-standard

since there was poor fixation in that the compression screws were placed

severely posterior with minimal purchase contributing to the failed fusion. In

addition the equinous position of the ankle was substandard. These failures

resulted in the need for a surgical revision at VA Boston in September 2010.

d. The two failed surgeries by Dr. Franchini in 2006 and 2009 more likely than

not contributed significantly to the CRPS that created significant disability

and ultimately led to a left below the knee amputation in August 2012.

Offer of assistance, including arrangements for a second opinion, additional

8

monitoring, expediting clinical consultations, bereavement support: She is now

very pleased with the care provided by Dr. William Butler, the surgeon who

performed the amputation. She did not feel that any other follow-up is required

since the amputation finally resolved her refractory pain syndrome.

Questions addressed in the discussion: She and her husband had no specific

questions because much of this had been explained by the consulting Podiatrist

from VA Boston.

Advisement of 1151 claims process and right to file administrative

tort claim: Director Lilly described the Tort claim and 1151 process to the

Veteran.

Continued communication regarding the adverse event: Ellen Novy (Risk Manager)

will be available for any questions regarding the Tort claim or 1151 process.

Contact information for individual managing the disclosure: Lee Lyford, LCSW

will be assigned as a Case Manager to make certain that the planned follow-up

occurs in a timely fashion. The Veteran was given her phone number.

/es/ TIMOTHY J. RICHARDSON

M.D.

Signed: 08/02/2013 15:57

Receipt Acknowledged By:

08/05/2013 16:36 /es/ LEE LYFORD, LCSW

GEC ASSISTANT MGR

08/05/2013 06:36 /es/ ELLEN M. NOVY

RISK MGT. COORD.

56.     Despite the Institutional Disclosure of Adverse Event record authored by VAMC,

the Regional Counsel for the U.S. Department of Veteran's Affairs administratively denied this

FTCA claim on May 2, 2014 solely on the basis that their "review of this claim did not reveal the

existence of any negligent or wrongful act . . . ."

### III.   FIRST CLAIM FOR RELIEF
**(Negligence – Thomas Franchini, DPM)**

57.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

58.     At all relevant times, Plaintiff April Wood was under the care and treatment of Defendant United States of America, through the VAMC and Dr. Thomas Franchini.

59.     Defendant United States of America is responsible for all negligent acts and/or omissions of Dr. Thomas Franchini during the relevant timeframe.

60.     VAMC is responsible for all negligent acts and/or omissions of Dr. Franchini during the relevant timeframe.

61.     Dr. Thomas Franchini owed Plaintiff April Wood a duty to exercise that degree of care, skill, caution, diligence and foresight exercised and expected of physicians under the same or similar circumstances.

62.     Dr. Thomas Franchini deviated from the standard of care required and was negligent in his care and treatment of Plaintiff April Wood.

63.     Dr. Franchini's negligence included, but is not limited to:

   a.     Failing to properly perform the September 13, 2006 surgery;

   b.     Inappropriately fusing Plaintiff's ankle/foot with plantar flexion;

   c.     Failing to select an appropriate surgical approach pre-surgery and during the 2006 surgery;

   d.     Failing to properly perform the subtalar joint fusion on December 18, 2009;

   e.     Failing to obtain proper fixation during the subtalar joint fusion on

December 18, 2009;

      f.     Inappropriately placing compression screws during the subtalar joint fusion on December 18, 2009;

      g.     Inappropriately placing screws during the the subtalar joint fusion that were severely posterior with minimal purchase contributing to the failed fusion.

      h.     Causing Plaintiff to inappropriately be in equinus position.

      i.     Failing to properly plan the 2006 and   2009 surgeries.

64.     As a direct and proximate result of Dr. Franchini's negligence, Plaintiff April Wood has suffered injuries, damages and losses, including but not limited to a below the knee amputation of her left leg and foot, past and future economic damages, past and future non-economic damages, past and future physical impairment, and past and future disfigurement. As a direct and proximate result of Dr. Franchini's negligence, Plaintiff April Wood has past and future damages for pain, suffering, inconvenience, emotional distress, and impairment of quality of life. As a direct and proximate result of Dr. Franchini's negligence, Plaintiff April Wood has and will incur damages pertaining to home services, home alterations, medical care, therapy, pharmaceuticals, surgeries, prostheses, medical devices, transportation, travel, and other expenses. As a direct and proximate result of Dr. Franchini's negligence and VAMC's negligence, Plaintiff April Wood has required a below the knee amputation and will forever require a wide range of expenses and incur a wide range of damages related to the amputation. Plaintiff makes a claim for all costs, attorneys' fees, pre-judgment interest, pre-filing interest, and post-judgment interest allowable under applicable law. Plaintiff makes a claim for all costs of litigation including deposition expenses, expert witness expenses, and filing fees allowable under applicable law.

## IV.      SECOND CLAIM FOR RELIEF
### (Negligence – VAMC)

65.      Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

66.      Defendant United States of America is responsible for all negligent acts and/or omissions of VAMC during the relevant timeframe.

67.      At all relevant times, Plaintiff April Wood was under the care and treatment of VAMC.

68.      VAMC, acting through its employees and agents, owed a duty of care to Plaintiff April Wood.

69.      VAMC breached its duties and was negligent in its care and treatment of Plaintiff April Wood.

70.      As a direct and proximate result of the negligence of VAMC, Plaintiff April Wood suffered injuries, damages and losses more fully described above.

## V.      THIRD CLAIM FOR RELIEF
### (Lack of Informed Consent – VAMC/Thomas Franchini, DPM)

71.      Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

72.      Dr. Thomas Franchini performed surgical procedures on Plaintiff April Wood on September 13, 2006 and on December 18, 2009.

73.      Employees and agents of VAMC, including but not limited to Dr. Thomas Franchini, negligently failed to obtain Plaintiff April Wood's informed consent before each of the surgical procedures by failing to inform Plaintiff April Wood of the substantial risks of the

surgeries and the course of treatment and by failing to inform Plaintiff April Wood of the alternatives to treatment available and by failing to properly obtain her informed consent regarding the general course of care regarding her left foot, left ankle, and left leg.

74.     A reasonable person in the same or similar circumstances as Plaintiff April Wood would not have consented to the surgical procedures or the overall course of care had she been given the information required for informed consent.

75.     The negligent failure of Defendant United States of America, through employees and agents of VAMC, including but not limited to Dr. Thomas Franchini, to obtain Plaintiff April Wood's informed consent caused Plaintiff April Wood to suffer injuries, damages and losses more fully described above.

WHEREFORE, Plaintiff Ms. Wood prays for an award of compensatory damages in favor of the Plaintiff and against the Defendant in an amount to be determined by the trier-of-fact, and an award of pre-filing interest, post-filing interest, pre-judgment interest, post-judgment interest, all other interest permitted by law, all costs permitted by law, expert witness fees, filing fees, deposition expenses, and for such other and further relief as this Court may deem appropriate.

Dated: October 8, 2014

/s/ David M. Lipman, Esq.
David M. Lipman, Esq.      Bar No.: 302
Peter B. Bickerman, Esq.   Bar No.: 1884
Attorney for **Plaintiff**
Lipman & Katz, PA
PO Box 1051
Augusta, ME 04332-1051
207-622-3711
dlipman@lipmankatz.com