# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| APRIL M. WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00399-JDL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| TIMOTHY W. MANSIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00503-JDL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| MARK S. PRESCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00551-JDL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| KENNETH MYRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-00045-JDL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

The four plaintiffs in these cases, April Wood, Timothy Mansir, Mark Prescott, and Kenneth Myrick, are veterans of the United States Armed Forces who allege that they were negligently treated by Dr. Thomas Franchini, a former Veterans Administration podiatrist at the Togus Veterans Administration Medical Center in Augusta, Maine (the "VAMC"). Each plaintiff asserts a claim against the federal government (alternatively the VAMC or the "Government") for negligence. In addition, Plaintiffs Wood and Prescott bring claims for lack of informed consent, and Plaintiff Mansir brings a claim for negligent infliction of emotional distress. The Government contends that the court lacks subject-matter jurisdiction over the cases and has filed consolidated motions to dismiss the plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), arguing that the claims were extinguished by Maine's three-year statute of limitations for health care providers, 24 M.R.S.A. § 2902 (2015) ("§ 2902").

The parties' arguments for and against dismissal raise three principal questions. First, whether § 2902 is a statute of limitations, and thus subject to equitable tolling, or whether it is a statute of repose that is not subject to equitable tolling and bars all suits brought after the three-year limitations period has expired. Second, whether § 2902 is preempted by the federal statute of limitations contained in the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C.A. § 2401(b) (2015). Third, assuming that § 2902 is a statute of repose and that it is *not* preempted by the

FTCA, whether there is any basis for the court to decline to apply § 2902's three-year limitations period.

For the reasons discussed below, I conclude that § 2902 is a statute of repose and not a statute of limitations. I also conclude that § 2902 is not preempted by the FTCA. Finally, I conclude that limited discovery should be permitted before I determine whether the three-year limitations period of § 2902 bars the plaintiffs' claims.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, I credit the plaintiffs' factual allegations and draw all reasonable inferences in the plaintiffs' favor. *Merlonghi v. United States,* 620 F.3d 50, 54 (1st Cir. 2010). It bears emphasis that I have received no evidence, I make no findings, and I reach no conclusions as to whether Dr. Franchini's treatment of the plaintiffs was negligent, as the plaintiffs claim.

### A.  April Wood (1:14-cv-00399-JDL)

During an Army training exercise in 2004, April Wood fell from a rope approximately 20 feet above the ground and seriously injured her left ankle, foot, and leg. ECF No. 1 at 2. She was honorably discharged later the same year and began receiving treatment at the VAMC in 2005. *Id.* In 2006, Dr. Franchini became Wood's VAMC podiatrist. *Id.* at 3. In September 2006, he conducted a fusion of Wood's left ankle, which provided temporary relief from the pain that Wood had been

---

[1]  Each document cited corresponds to the docket and ECF numbers for that individual plaintiff's case.

experiencing.  *Id.*  However, in July 2007, Wood reported that the pain in her left ankle had returned and that she had difficulty walking.  *Id.*  Dr. Franchini told her that the fusion of her left ankle had been successful and that any problems she was experiencing were due either to degenerative joint disease or her own anatomy.  *Id.* In December 2009, Dr. Franchini diagnosed Wood with osteopenia and degenerative joint disease and performed another surgery, a "left subtalar joint fusion."  *Id.* at 3-4.

Wood's pain persisted over the following two years.  *Id.* at 4.  In November 2011, she was diagnosed with the "beginning of" Reflex Sympathetic Dystrophy ("RSD"), a disorder of the sympathetic nervous system that is characterized by chronic, severe pain.[2]  *Id.*  As a result of worsening pain in her left leg, ankle, and foot, Wood underwent an amputation of her left leg below the knee in August 2012, which was not performed by Dr. Franchini.  *Id.*  Wood was told that her RSD and the resulting need for a below-the-knee amputation were due to the trauma from the fall she sustained while in the Army in 2004, as well as "anatomical problems."  *Id.* at 4-5.

In February 2013, the VAMC invited Wood and her husband to a meeting with VAMC Director Ryan Lilly and VAMC Dr. Timothy Richardson concerning the medical care she had received at the VAMC.  *Id.* at 5.  At this meeting with Lilly and Richardson, Wood learned for the first time that the need for her below the knee amputation was related to Dr. Franchini's negligent care.  *Id.*

---

[2]  RSD is also known as "Complex Regional Pain Syndrome," or "CRPS."  Reflex Sympathetic Dystrophy Syndrome Association website, http://www.rsds.org/telltale-signs-and-symptoms-of-crpsrsd/ (last visited Jan. 18, 2016).  Both terms appear in the parties' briefs and exhibits.  For simplicity's sake, I use the term "RSD," although I recognize that "CRPS" is also appropriate.

In August 2013, the VAMC produced a document entitled "Institutional Disclosure of Adverse Event" (the "Disclosure") which described the VAMC's investigation of Franchini and the February 2013, meeting with Wood.  ECF No. 19-1.  The Disclosure stated that Dr. Franchini had improperly positioned Wood's foot and ankle during the 2006 ankle fusion surgery, which contributed to the development of her RSD, and that Dr. Franchini's surgical approach was "probably substandard."  *Id.* at 1-2.  The Disclosure also stated that the 2009 subtalar joint fusion procedure that Dr. Franchini performed was substandard because of his poor placement of compression screws and improper positioning of Wood's ankle.  *Id.* at 2.

The Disclosure advised Wood of her right to file an administrative tort claim against the VAMC pursuant to the FTCA, *id.* at 2, which Wood filed on November 19, 2013, ECF No. 28 at 8.  The U.S. Department of Veterans Affairs ("VA") denied Wood's claim on May 2, 2014.  ECF No. 1 at 9-10.  Wood subsequently filed her complaint on October 9, 2014.  ECF No. 1.  The Government filed its Second Amended Motion to Dismiss Wood's complaint on May 22, 2015.[3]  ECF No. 28.

## B.    Timothy Mansir (1:14-cv-00503-JDL)

In October 2007, Timothy Mansir injured his foot while serving on duty in Iraq as a member of the United States Marine Corps.  ECF No. 1 at 4.  When he returned to the United States, Mansir received treatment at the VAMC, where doctors

---

[3]  The Government filed an earlier Amended Motion to Dismiss for Lack of Jurisdiction on April 7, 2015.  ECF No. 20.  The following month, Magistrate Judge John Nivison stayed the deadlines associated with this First Amended Motion to Dismiss pending resolution of the Second Amended Motion to Dismiss.  ECF No. 27 at 2.  The First Amended Motion to Dismiss is not considered in this order.

suspected that he had torn ligaments in his right ankle. *Id.* In early 2008, Mansir was referred to Dr. Franchini as his VAMC podiatrist, and was first examined by Franchini on March 17, 2008. *Id.*

Dr. Franchini diagnosed Mansir as having an "unstable" right ankle and recommended that he undergo a "right Elmslie ankle reconstruction," which Franchini performed the following month. *Id.* at 4-5. After the surgery, Mansir continued to experience ankle pain and Dr. Franchini subsequently diagnosed him with sural nerve entrapment. *Id.* at 5. Dr. Franchini performed a second procedure, a "sural nerve release surgery," in May 2009. *Id.*

After continuing to experience ankle pain following the second surgery, Mansir sought a second opinion from a civilian podiatrist at Foot and Ankle Associates in Portland, Maine, in 2010. *Id.* That podiatrist performed additional procedures: a sural neurectomy, peroneal tendon repair, and tenodesis in July 2010, but Mansir experienced only slight improvement. *Id.* He continues to suffer pain in his right ankle and foot. *Id.*

In January 2013, the VAMC informed Mansir that he may have received substandard care from Dr. Franchini. *Id.* The next month, Mansir underwent an examination by a consulting VA podiatrist, *id.* at 6, and in April 2013, the VAMC issued a VAMC Disclosure, which stated that Dr. Franchini's treatment for Mansir's right ankle was "overly aggressive" and constituted substandard medical care, ECF No. 1-2 at 1. The Disclosure also stated that another procedure called the "Brostrom Gould procedure" would have been more appropriate and posed a "much reduced" risk of tendonosis and sural nerve injury. *Id.*

6

The Disclosure also advised Mansir of his right to file an administrative tort claim against the VAMC pursuant to the FTCA.  *Id.*  Mansir filed his administrative tort claim on January 31, 2014, ECF No. 1-3 at 2-5, and the VA denied the claim on July 22, 2014, ECF No. 1 at 4.  Mansir subsequently filed his complaint on November 25, 2014.  ECF No. 1.  The Government filed its Motion to Dismiss Mansir's complaint on May 22, 2015.  ECF No. 16.

## C.   Mark Prescott (1:14-cv-00551-JDL)

Mark Prescott injured his left leg, ankle, and foot while running in the 1990s; his condition worsened over time and necessitated surgical procedures in 2001 and 2003.  ECF No. 1 at 2.  Prescott was honorably discharged from the United States Navy in 2004, *id.*, and began receiving medical treatment from Dr. Franchini at the VAMC in 2005, *id.* at 3.

In November 2005, Dr. Franchini diagnosed Prescott with osteophytes in his left ankle and later performed two surgeries in July 2006 and January 2007.  *Id.* at 3-4.  During the first surgery, Dr. Franchini removed hardware that had previously been placed in Prescott's ankle in 2001 and 2003.  *Id.* at 3.  Afterwards, Prescott continued to experience pain in his left ankle, leading Dr. Franchini to conclude that a second surgery was required.  *Id.* at 4.  The second surgery that Dr. Franchini performed was an "open repair of osteochondral defect of the left talar dome."  *Id.*

Prescott continued to experience pain in his ankle and foot, and approximately two years later, in January 2009, Dr. Franchini concluded that the pain was the result of degenerative joint disease.  *Id.* at 4-5.  Dr. Franchini examined Prescott again in December 2009, and noted that he "has developed an abnormal gait due to

damage of the left ankle and started to cause excessive load to the right ankle which is causing pain and discomfort." *Id.* at 5.

In early 2013, the VAMC invited Prescott to a meeting with VAMC Director Lilly and VAMC Chief of Staff Richardson concerning his medical care. *Id.* at 6. At the meeting, Prescott was informed of a podiatric note dated February 7, 2013, authored by another podiatrist who believed that Dr. Franchini's second surgery on Prescott was "less than ideal and may have caused bone pressure against the medial wall of the talus" causing Prescott's symptoms to worsen. *Id.* at 5-6.

Prescott filed an administrative tort claim against the VAMC pursuant to the FTCA on January 31, 2014, which the VA denied on July 22, 2014. ECF No. 1 at 2. Prescott subsequently filed his complaint on December 31, 2014. ECF No. 1. The Government filed its Motion to Dismiss Prescott's complaint (ECF No. 15) on May 22, 2015.

## D.    Kenneth Myrick (1:15-cv-00045-JDL)

Kenneth "Jake" Myrick underwent an Elmslie procedure on his left ankle, performed by Dr. Franchini at the VAMC, on February 25, 2005.[4] ECF No. 1 at 2. After the surgery, Myrick continued to experience pain in his left leg. *Id.* In July 2007, Dr. Franchini reviewed an MRI exam of Myrick's leg and explained that he saw no evidence of anything that could be the cause of Myrick's pain. *Id.* Myrick subsequently underwent arthroscopic surgery on his left knee at the VA Hospital in Boston in October 2007, and throughout 2008 received various treatments, such as

---

[4]  In contrast to the other plaintiffs, Myrick did not allege details regarding his military service or the date or circumstances under which he first injured his left ankle in his Complaint.

8

injections, physical therapy, and exercise, none of which resolved his leg pain. *Id.* In January 2011 and February 2012, Myrick had additional surgeries on his left knee at the VA Hospital in Boston, yet he continued to experience pain in his leg. *Id.* at 3.

In January 2013, VAMC officials contacted Myrick concerning the medical care he had received from Dr. Franchini. *Id.* One month later, he underwent an examination by another VA podiatrist who informed him that the Elmslie procedure performed by Dr. Franchini on his left ankle was unsuccessful due to "sub-standard performance of the procedure," and that Myrick "still clearly has lateral ankle instability[.]" *Id.* Another examination in 2014 revealed that the Elmslie procedure resulted in a nerve entrapment, which Dr. Franchini never recognized, and which was the cause of the pain Myrick experienced in his leg after the surgery. *Id.*

Myrick filed an administrative tort claim with the VA on May 15, 2013, which the VA denied on January 6, 2014. *Id.* On March 26, 2014, Myrick received a notice from the VA that his administrative tort claim was being reconsidered. *Id.* On August 18, 2014, he received a notice that the reconsideration was denied. *Id.* Myrick filed his complaint on January 30, 2015. ECF No. 1. The Government filed the instant Motion to Dismiss for Lack of Jurisdiction Pursuant to 24 M.R.S.A. § 2902 on May 22, 2015.[5] ECF No. 13.

---

[5] As with Plaintiff Wood, the Government filed an earlier Motion to Dismiss Myrick's Complaint on April 6, 2015. ECF No. 6. The following month, Magistrate Judge John Nivison stayed the deadlines associated with this initial Motion to Dismiss pending resolution of the instant Motion to Dismiss Myrick's Complaint Pursuant to 24 M.R.S.A. § 2902. ECF No. 12. The earlier Motion to Dismiss (ECF No. 6) is not considered in this order.

In its Motion to Dismiss Myrick's Complaint Pursuant to 24 M.R.S.A. § 2902 (ECF No. 13), the Government raised the issue of the continuing negligent treatment doctrine. ECF No. 13 at 6. The Government did not raise this issue in the pertinent motions to dismiss that it filed in the Wood case

## II. LEGAL STANDARD

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject-matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.,* 399 F.3d 1, 8 n.6 (1st Cir. 2005) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 61 (3d ed. 2002)).  Such a challenge to the court's subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh,* 546 U.S. at 506; *Kontrick v. Ryan,* 540 U.S. 443, 455 (2004).

In ruling on a Rule 12(b)(1) motion, the court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1209-10 (1st Cir. 1996).  Furthermore, the court may consider "whatever evidence has been submitted," *id.* at 1210*,* and the fact that exhibits have been attached to a Rule 12(b)(1) motion does not convert it to a Rule 56 summary judgment motion, *Gonzalez*

---

(1:14-cv-00399-JDL, ECF No. 28), the Mansir case (1:14-cv-00503-JDL, ECF No. 16), and the Prescott case (1:14-cv-00551-JDL, ECF No. 15). Nevertheless, all four plaintiffs joined in a consolidated response in opposition to the Government's argument that § 2902 bars their claims, and they all raised the continuing negligent treatment doctrine in their consolidated brief.  1:14-cv-00399-JDL, ECF No. 30; 1:14-cv-00503-JDL, ECF No. 17; 1:14-cv-00551-JDL, ECF No. 16; 1:15-cv-00045-JDL, ECF No. 16. The Government also filed a consolidated reply in which it addressed the four plaintiffs' continuing negligent treatment argument.  1:14-cv-00399-JDL, ECF No. 32; 1:14-cv-00503-JDL, ECF No. 19; 1:14-cv-00551-JDL, ECF No. 18; 1:15-cv-00045-JDL, ECF No. 17.  Therefore, in my consideration and discussion of the case, I do not distinguish between the Goverment's motion to dismiss filed in the Myrick case, the Government's Second Amended Motion to Dismiss filed in the Wood case, and the Government's motions to dismiss filed in the Mansir and Prescott cases.

*v. United States,* 284 F.3d 281, 288 (1st Cir. 2002).  "The plaintiff has the burden of clearly alleging definite facts to demonstrate that jurisdiction is proper." *Nulankeyutmonen Nkihtaqmikon v. Impson,* 503 F.3d 18, 25 (1st Cir. 2007) (citing *Dubois v. United States Dep't of Agric.,* 102 F.3d 1273, 1281 (1st Cir. 1996) ("The burden falls on the plaintiff clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction.") (citation and internal quotation marks omitted)).

## III.  LEGAL ANALYSIS

### A.     Is 24 M.R.S.A. § 2902 a Statute of Repose or a Statute of Limitations?

The threshold question presented by the Government's motion to dismiss is whether the three-year limitations period established by § 2902 is a statute of repose or a statute of limitations.  The operative provision in § 2902 states: "For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury."[6]

The Government argues that § 2902 is a statute of repose, i.e., a statute that is the substantive law of a state and that bars any suit that is not filed within a specified time period from a defendant's negligent act or omission, even if the period

---

[6]  Section 2902 states in pertinent part:

> Except as provided in section 2902-B, actions for professional negligence must be commenced within 3 years after the cause of action accrues.  For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury. . . . [A]ctions for professional negligence by a minor must be commenced within 6 years after the cause of action accrues or within 3 years after the minor reaches the age of majority, whichever first occurs.  This section does not apply when the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action accrues when the plaintiff discovers or reasonably should have discovered the harm.

ends before the plaintiff has suffered or gained knowledge of a resulting injury. ECF No. 28 at 9-12; ECF No. 32 at 3-6[7]; *see also Statute of Repose,* Black's Law Dictionary (9th ed. 2009). "Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *CTS Corp. v. Waldburger,* 134 S. Ct. 2175, 2183 (2014) (citations and internal quotation marks omitted). Unlike a statute of limitations, which is procedural, a statute of repose is the substantive law of the state, *Anderson v. United States,* 669 F.3d 161, 164-65 (4th Cir. 2011), and, therefore, it controls the extent to which the Federal Government has waived sovereign immunity and has subjected itself to liability to the same extent a private party is subject to liability under state law, *Huddleston v. United States,* 485 F. App'x 744, 745 (6th Cir. 2012). If § 2902 is a statute of repose, then the plaintiffs' claims are time-barred, subject only to several possible exceptions discussed later.

The plaintiffs argue that § 2902 is a statute of limitations, i.e., a statute that bars claims after a specified period based on the date when the claim accrued. ECF No. 30 at 12-17; *see also, Statute of Limitations,* Black's Law Dictionary (9th ed. 2009). Statutes of limitations, unlike statutes of repose, are subject to the doctrine of equitable tolling whereby the limitations period is tolled "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *CTS Corp.,* 134 S. Ct. at 2183 (citation and internal quotation marks

---

[7] For simplicity's sake, all citations to the parties' briefs in the Legal Analysis section of this order are to the docket in Plaintiff Wood's case, 1:14-cv-00399-JDL, unless indicated otherwise.

omitted).  The parties agree that if § 2902 is a statute of limitations, the plaintiffs' claims are not time-barred.

The Maine Law Court resolved the question of whether § 2902 is a statute of repose or a statute of limitations in *Choroszy v. Tso,* 647 A.2d 803, 808 (Me. 1994), where it affirmatively recognized that the Legislature had decided "to impose a statute of repose" when it enacted § 2902.  The plaintiffs attempt to dismiss this aspect of *Choroszy* as dicta, characterizing it to be a "fleeting reference" that "cannot reasonably be read to alter the [L]egislature's intent that the statute would include a statute of limitations rather than a statute of repose."  ECF No. 30 at 15.  This argument does not square, however, with the fact that § 2902's status as a statute of repose was important to the Maine Law Court's determination in *Choroszy* that § 2902 does not violate the constitutional guarantee of equal protection.  The Maine Law Court concluded that "[t]he Legislature's decision to impose a statute of repose" was rationally related to its "legitimate goal" of controlling the cost of medical malpractice insurance and of health care in general and was, therefore, valid and not a violation of equal protection.  *Choroszy,* 647 A.2d at 808.

The plaintiffs offer three additional responses in support of their argument that the characterization of § 2902 as a statute of repose in *Choroszy* is mere dicta: (1) § 2902 is referred to as a statute of limitations in its title and in several other Maine Law Court decisions; (2) by its own language, § 2902's three-year limitations period is connected to the occurrence of an injury; and (3) there are exceptions to § 2902's limitations period that are incompatible with a statute of repose.  ECF No. 30 at 12-17.  My examination of each of these points buttresses the conclusion that the

13

Maine Law Court meant what it said when it characterized § 2902 in *Choroszy* as being a statute of repose.

### 1. Reference to 24 M.R.S.A. § 2902 as a Statute of limitations in Its Title and by the Maine Law Court

The plaintiffs contend that the title of § 2902 in the Maine Revised Statutes—"Statute of limitations for health care providers"—demonstrates that the Legislature intended the statute to be a statute of limitations and not a statute of repose. ECF No. 30 at 12. The Government disagrees, asserting that "it is well-established that the title of a statute does not define whether a statute is a statute of limitations or a statute of repose." ECF No. 28 at 11 (citing *CTS Corp.,* 134 S. Ct. at 2185).

As recognized by the Supreme Court, the term "statute of limitations" may refer to either a statute of limitations or a statute of repose:

> While the term "statute of limitations" has acquired a precise meaning, distinct from "statute of repose," and while that is its primary meaning, it must be acknowledged that the term "statute of limitations" is sometimes used in a less formal way. In that sense, it can refer to any provision restricting the time in which a plaintiff must bring suit. Congress has used the term "statute of limitations" when enacting statutes of repose.

*CTS Corp.,* 134 S. Ct. at 2185 (internal citations omitted).

The Maine Law Court has also recognized that the term "statute of limitations" may refer to both statutes of limitations and statutes of repose. *See Dahms v. Osteopathic Hosp. of Me.*, 2001 ME 145, ¶ 1 n.1, 782 A.2d 774. In addition, "[a]bstracts of [t]itles" appearing in the Maine Revised Statutes "are not legal provisions." 1 M.R.S.A. § 71(10) (2015). Accordingly, the use of the term "statute of

14

limitations" in § 2902's title sheds little to no light on whether the provision is a statute of limitations or a statute of repose.

Likewise, the fact that the Maine Law Court has previously referred to § 2902 as a "statute of limitations" sheds little light on the statute's nature.  The plaintiffs cite two such cases—*Godbout v. WLB Holding, Inc.,* 2010 ME 46, ¶ 8, 997 A.2d 92, and *Frame v. Millinocket Reg'l Hosp.,* 2013 ME 104, ¶ 1, 82 A.3d 137—where the Maine Law Court used the term "statute of limitations" when referring to § 2902.[8] However, neither case offers an analysis which supports the contention that the statute is a procedural statute of limitations rather than a substantive statute of repose.  Thus, the fact that the Maine Law Court has referred to § 2902 as a statute of limitations and as a statute of repose in different decisions is in keeping with the Supreme Court's observation in *CTS Corp.* that the term "statute of limitations" is used to refer to any provision that restricts the time in which a suit must be brought. 134 S. Ct. at 2185.

### 2.    Claims Based On An Act or Omission

The plaintiffs also contend that § 2902 is a statute of limitations because it explicitly connects its limitations period to the occurrence of an injury (i.e., "a cause of action accrues on the date of the act or omission giving rise to the injury"), whereas a true statute of repose would limit claims without reference to the occurrence of an

---

[8]  In *Godbout v. WLB Holding, Inc.,* 2010 ME 46, ¶ 8, 997 A.2d 92, the Maine Law Court referred to the "three-year professional negligence statute of limitations" and cited *Choroszy,* 647 A.2d at 807, for the notion that while "some hardship" that may accompany the application of § 2902, "that hardship is not one of constitutional dimension."  In *Frame v. Millinocket Reg'l Hosp.,* 2013 ME 104, ¶¶ 1, 27, 82 A.3d 137, the Maine Law Court discussed whether a plaintiff could amend her unsworn notice of claim and have the amendment relate back to the original filing date for purposes of 24 M.R.S.A. § 2859.

injury.   ECF No. 30 at 14.   The Government disagrees, arguing that § 2902 exemplifies a statute of repose because it places an outer limit on the right to bring a civil action measured from the date of a defendant's last culpable act or omission. ECF No. 32 at 3 (quoting *CTS Corp.,* 134 S. Ct. at 2183) (internal quotation marks omitted).

The accrual of a medical malpractice cause of action from the date of an act or omission giving rise to an injury, and not from the date of the discovery of the injury, is the controlling element of § 2902.   Accordingly, § 2902 is a statute of repose because it "puts an outer limit on the right to bring a civil action" that is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant."   *CTS Corp.,* 134 S. Ct. at 2182; *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1056 at 240 (3d ed. 2002) ("[T]he point of commencement for the applicable statute of repose is commonly the date of the last act or omission that caused the plaintiff's injury.").

### 3.   Exceptions that Toll § 2902's Limitations Period

The plaintiffs contend that, by definition, statutes of repose are not subject to any exceptions and the fact that the Maine Legislature established several exceptions to the operation of § 2902 demonstrates that the statute was intended to be a statute of limitations.   ECF No. 30 at 13.   In addition to the statute's exception for foreign objects left in the body, the plaintiffs cite to the statute's tolling of the limitations period for minors, as well as the separate tolling provision that applies once a medical malpractice claim is made subject to the state's mandatory pre-litigation screening

16

process. *Id.* at 13 (citing 24 M.R.S.A. § 2859); *id.* at 16-17 (citing *Frame,* 2013 ME 104, ¶¶ 1, 27, 82 A.3d 137).

The Government argues that § 2902 is a statute of repose because it is not subject to equitable tolling or the "discovery rule," as is the case with statutes of limitations. ECF No. 28 at 9-10.[9] Instead, the Government emphasizes, the exception to the three-year limitations in cases where a foreign object is left inside a patient's body does not arise as a matter of equitable tolling, but as a legislatively crafted exception. *Id.* (citing *Lucas v. D'Angelo, M.D.,* 37 F. Supp. 2d 45, 46 (D. Me. 1999) ("The statute of limitations in medical malpractice actions was amended in 1985 to eliminate the so-called discovery rule in all cases except foreign object surgical cases.")); *see also Dasha v. Me. Med. Ctr.,* 665 A.2d 993, 996 (Me. 1995) ("The Legislature has explicitly outlined the contours of the statute of limitations in medical malpractice actions, and has not left room for us to carve out an exception to these rules.").

Statutes of repose are not subject to equitable tolling as are statutes of limitations. *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95, 106 (2d Cir. 2013) ("[A] statute of repose is subject only to legislatively created exceptions and not to equitable tolling.") (internal citations and quotation omitted); *see also Douglas v. York Cty.,* 433 F.3d 143, 152 (1st Cir. 2005) ("The Maine

---

[9] "Under Massachusetts law the doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." *Bernier v. The Upjohn Co.,* 144 F.3d 178, 180 (1st Cir. 1998); *see also, Charette v. Jackson,* 2009 WL 2824746, at *4 (D. Me. Aug. 27, 2009). The discovery rule is "the rule that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim." *Discovery Rule,* Black's Law Dictionary (9th ed. 2009).

courts have not been receptive to quasi-tolling arguments about equitable estoppel of the limitations defense or to equitable tolling itself, where plaintiffs . . . have tried to use those doctrines to escape the strictures imposed on *statutory* tolling.") (emphasis added).   Here, however, the plaintiffs' argument is based on statutory tolling, not equitable tolling.   Their assertion that, by definition, statutes of repose are not subject to statutory tolling is not supported by citation to any authority and it runs counter to the notion that a limitations period may be tolled by statute, rather than equitably, and still be considered a statute of repose.   *See IndyMac MBS, Inc.,* 721 F.3d at 106; *Mamea v. United States*, 2011 WL 4371712, at \*9 (D. Haw. Sept. 16, 2011) (concluding that legislated tolling provisions are consistent with a statute of repose).   The plaintiffs have not identified any sound reason why a legislature may not, as a matter of public policy and legislative prerogative, subject a statute of repose to exceptions—for example, by tolling the onset of the limitations period while a claimant is a minor—without thereby transforming the statute into a statute of limitations.

The plaintiffs argue separately that the Maine Law Court effectively permitted equitable tolling in connection with § 2902 when it adopted the continuing negligent treatment doctrine in *Baker v. Farrand,* 2011 ME 91, 26 A.3d 806.   In *Baker,* the Maine Law Court held that a plaintiff may bring a single action for malpractice where two or more related acts or omissions by a health care provider deviated from the applicable standard of care, so long as at least one of the allegedly negligent acts or omissions occurred within the three-year period of repose.   *Baker,* 2011 ME 91, ¶ 29, 26 A.3d 806.   The plaintiffs argue that if § 2902 is truly a statute of repose, the *Baker*

18

court would have been bound by the statute and would not have had the flexibility to carve out a major exception to the three-year limit.  ECF No. 30 at 13-14.

The plaintiffs' argument misconstrues the holding in *Baker*.  The Maine Law Court's adoption of the continuing negligent treatment doctrine was based on the language of § 2902 read in conjunction with the Maine Health Security Act's definitions of "Action for professional negligence" and "Professional negligence" contained in 24 M.R.S.A. §§ 2502(6), 2502(7).  *Baker,* 2011 ME 91, ¶¶ 23, 24, 26 A.3d 806.  The court concluded that by the terms of the statute, a cause of action for professional negligence is stated "when either a single act or omission or two or more acts or omissions complained of constitute a deviation from the applicable standard of care[.]"  *Id.* ¶ 23 (internal quotation marks omitted).  *Baker* adopted the continuing negligent treatment doctrine as a matter of statutory construction and not based on principles of equity.  Thus, the continuing negligent treatment doctrine, as adopted in Maine, is not a form of equitable tolling and does not call into question § 2902's status as a statute of repose.  This conclusion is consistent with *Dasha v. Me. Med. Ctr.,* 665 A.2d at 995-96, where the Maine Law Court held that § 2902 is not subject to equitable tolling because the "Legislature has clearly spoken in restricting the instances in which a medical malpractice action can be filed beyond the general three-year statute of limitations[,]" and "has not left room for us to carve out an exception to these rules."  *Id.* (citing *Choroszy,* 647 A.2d at 808).

### 4.   Conclusion

The statute at issue here—24 M.R.S.A. § 2902—is a statute of repose.  Its limitations period begins to run from the occurrence of a negligent act or omission,

and not from the claimant's discovery of harm caused by the negligent act or omission.  Because each plaintiff's action was initiated more than three years after the last alleged negligent act committed by Dr. Franchini, their FTCA claims are time-barred, just as they would be if they had initiated an action in state court for medical negligence pursuant to 24 M.R.S.A. § 2902.  I turn then, to consider the plaintiffs' additional arguments beginning with their argument that even if § 2902 is a statute of repose, it does not apply here because it has been preempted by the FTCA's two-year statute of limitations contained in 28 U.S.C.A. § 2401(b).

## B.  Does the FTCA Preempt 24 M.R.S.A. § 2902?

The FTCA's statute of limitations provision, 28 U.S.C.A. § 2401(b), states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months . . . of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C.A. § 2401(b).

Although this provision does not expressly preempt state law, the plaintiffs argue that it does so by implication and assert that two theories of implied preemption apply to their claims: (1) field preemption and (2) conflict preemption. *See* ECF No. 30 at 4-11 (citing *Mamea v. United States,* 2011 U.S. Dist. LEXIS 105315, at *28, *32 (D. Haw. Sept. 16, 2011) (discussing field preemption); *Cooper v. United States,* 2013 U.S. Dist. LEXIS 181006, at *12-15 (E.D. Pa. Dec. 30, 2013); *Abila v. United States,* 2012 U.S. Dist. LEXIS 143204, at *10-11 (D. Nev. Oct. 3, 2012); *Blau v. United States,* 2013 U.S. Dist. LEXIS 26027, at *8 (M.D. Fla. Feb. 26, 2013);

*Oliveira v. United States,* 2013 U.S. Dist. LEXIS 116004, at *5-8 (D. Or. Aug. 6, 2013);

*Zander v. United States,* 786 F. Supp. 2d 880, 886 (D. Md. 2011)).

### 1.    Field Preemption

Field preemption exists where a framework of federal regulation is "so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona v. United States,* 132 S. Ct. 2492, 2501 (2012) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947) (quotation marks omitted)).  It is important to note, however, that state law generally enjoys a presumption of validity. *Pharm. Research & Mfrs. of Am. v. Walsh,* 538 U.S. 644, 661-62 (2003).

The plaintiffs contend that field preemption applies here because § 2401(b) is couched in terms of accrual.  ECF No. 30 at 5.  Thus, they argue, Congress' decision to define the FTCA's statute of limitations period as two years after a claim *accrues* was "a clear indication that it intended to occupy the field of both statutes of limitations and statutes of repose" because statutes of repose bar claims without regard to accrual.  *Id.* (quoting *Mamea,* 2011 U.S. Dist. LEXIS 105315, at *32).  The plaintiffs rely heavily on the District of Hawaii's opinion in *Mamea,* in which the court reasoned that state statutes of repose obstruct Congress' purpose of creating a uniform system to resolve federal tort claims, insofar as two tort claims filed in states with differing repose statutes could be subject to different time limits in which to file claims against the federal government.  *See Mamea,* 2011 U.S. Dist. LEXIS 105315,

at *31-33.  *Cf.* Tom Jacob, *Preemption of State Statutes of Repose in Federal Tort Claims,* Am. Ass'n for Just., 2013 Annual AAJ-PAPERS 83 (2013).

Contrary to the position adopted in *Mamea*, I am not persuaded that the use of the term "accrues" in § 2401(b) of the FTCA evinces Congress's intent to occupy the field of state tort law, an area that has traditionally been occupied by the States.  "In our federal system, there is no question that States possess the traditional authority to provide tort remedies to their citizens as they see fit." *Wos v. E.M.A. ex rel. Johnson,* 133 S. Ct. 1391, 1400 (2013) (internal citation and quotation marks omitted).  "Where the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be 'clear and manifest.'"  *English v. Gen. Elec. Co.,* 496 U.S. 72, 79 (1990) (quotation omitted); *Rice,* 331 U.S. at 230 ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").

Here, the use of the term "accrues" in § 2401(b), by itself, is not evidence of a clear and manifest Congressional intent that the FTCA's limitations period should apply to the exclusion of repose periods established by the states.  Moreover, the fact that Congress did not enact an express preemption provision in the nearly 70-year history of the FTCA suggests that it did not intend to supersede state statutes of repose which are part of each state's substantive tort law.  *See In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 174-75 (1st Cir. 2009) ("[I]t is telling that Congress did not go so far as to enact an express preemption provision at any time during the more than forty-year history of Medicare.") (citing *Wyeth v. Levine,*

22

129 S. Ct. 1187, 1200 (2009) ("[Congress] surely would have enacted an express pre-emption provision at some point during the [Federal Food, Drug, and Cosmetic Act's] 70-year history.")).

Concluding that field preemption does not apply here is consistent with the position adopted by the Fourth, Sixth, and Seventh Circuits—the three Circuit Courts of Appeals that have addressed the issue. In *Anderson*, the Fourth Circuit held that "an FTCA claim does not lie against the United States where a statute of repose would bar the action if brought against a private person in state court," because "a state's enactment of a statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." 669 F.3d at 164-65 (internal citations and quotations marks omitted). In *Huddleston*, the Sixth Circuit held that § 2401(b) did not preempt Tennessee's three-year statute of repose because the state statute was "a substantive requirement, not just a procedural hurdle," 485 F. App'x at 745-46, and because "[t]he FTCA does not create liability, it merely waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances," *id.* at 745 (quoting *Myers v. United States,* 17 F.3d 890, 899 (6th Cir. 1994) (quotations marks omitted)). Because "Tennessee's statute of repose extinguishes the cause of action itself," the Sixth Circuit held, the plaintiff had no cognizable claim, and "applying Tennessee's statute of repose to FTCA plaintiffs [did] not run afoul of the Supremacy Clause." *Id.* at 746. Likewise, in *Augutis v. United States*, 732 F.3d 749, 754 (7th Cir. 2013), the Seventh Circuit held that the Illinois statute of repose was "part of the substantive

23

law of the state where the tortious act or omission occurred," and was therefore
incorporated by the FTCA rather than being expressly or impliedly preempted.

Accordingly, in enacting the FTCA, Congress did not intend to "occupy the
field" of substantive state statutes of repose such as Maine's statute, 24 M.R.S.A. §
2902, nor did it express a "federal interest so dominant that the federal system will
be assumed to preclude enforcement of state laws on the same subject," *Arizona*, 132
S. Ct. at 2501 (quotation omitted).   I conclude that § 2401(b) of the FTCA does not
preempt 24 M.R.S.A. § 2902 on the basis of field preemption.

### 2.   Conflict Preemption

Conflict preemption occurs "where compliance with both federal and state
regulations is a physical impossibility," *Arizona,* 132 S. Ct. at 2501 (quoting *Fla. Lime
& Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43 (1963) (quotation marks
omitted)), or where "state law stands as an obstacle to the accomplishment and
execution of the full purposes and objectives of Congress," *id.* (quoting *Hines v.
Davidowitz,* 312 U.S. 52, 67 (1941) (quotation marks omitted)).   As with field
preemption, state law enjoys a presumption of validity.  *Pharm. Research & Mfrs. of
Am.,* 538 U.S. at 661-62.

The plaintiffs argue that the conflicting state and federal accrual provisions of
24 M.R.S.A. § 2902 (three years after the act or omission giving rise to the injury) and
§ 2401(b) of the FTCA (two years after injury or discovery thereof) make it impossible
for a plaintiff to comply with both state and federal law when bringing a FTCA
negligence claim in Maine.   ECF No. 30 at 6.   They also assert that the differences
between Maine's mandatory pre-litigation screening panel process, codified at 24

24

M.R.S.A. §§ 2851-2859 (2015), and the FTCA's administrative claim requirement, codified at 28 U.S.C.A. § 2675(a) (2015), make it apparent that "[t]hese systems certainly were intended to function separately," and that Maine law is therefore preempted in this case. *Id.*

The Government dismisses as a "red herring" the plaintiffs' assertion that a conflict exists between the two statutes because "[s]ubstantive state tort law, like Section 2902, sets the parameters of the federal courts' FTCA jurisdiction, not the other way around."   ECF No. 32 at 7 (citing 28 U.S.C.A. § 1346(b)(1) (granting "exclusive jurisdiction" over civil claims against the United States for money damages for injury or loss of property under circumstances where the United States, if a private person, "would be liable to the claimant in accordance with the law of the place where the act or omission occurred.")).  The Government argues that the FTCA's purpose "is to hold the United States liable in certain tort actions to the extent a private party would be under state substantive law," and § 2902 is substantive state law.  *Id.* at 8.  Thus, the Government contends, the plaintiffs must first have a cognizable cause of action under state law before they may file an administrative claim under the FTCA.  *Id.* at 7.  In this case, however, the Government claims, § 2902 extinguished the plaintiffs' malpractice claims years ago, and, therefore, no conflict between state and federal law exists.  *Id.* at 7-8.

The Government also notes that the cases relied upon by the plaintiffs for their conflict preemption argument are distinguishable from this case because the cited cases involved claimants who, unlike the plaintiffs, filed their administrative FTCA claims within the applicable state period of repose.  ECF No. 32 at 8 n.7 (citing

*Cooper,* 2013 WL 6845988, at *5; *Blau,* 2013 WL 704762, at *1-2; *Abila v. United States,* 2011 WL 3444166, at *1 (D. Nev. Aug. 8, 2011);[10] *Zander,* 786 F. Supp. 2d at 882).

The plaintiffs have not established that compliance with § 2902 and § 2401(b) is a "physical impossibility." *See Arizona,* 132 S. Ct. at 2501. There is no dispute that each of the plaintiffs filed their administrative tort claims more than three years after they were last treated by Dr. Franchini—and, therefore, after the expiration of § 2902's period of repose.[11] Thus, the plaintiffs' claims concerning Dr. Franchini's treatment were already extinguished when they filed their federal administrative tort claims. *See CTS Corp.,* 134 S. Ct. at 2187 ("A statute of repose . . . may preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue[.]"). "[E]ven where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability." *Zabala Clemente v. United*

---

[10] I note that in asserting that *Abila* is factually distinguishable, the Government cites to a different decision than that which the plaintiffs cited. ECF No. 32 at 8 n.7. The Government cites to the District of Nevada's August 8, 2011, order in which the court denied the Government's motion to dismiss. *Id.* (citing *Abila,* 2011 WL 3444166, at *1 (D. Nev. Aug. 8, 2011)). The plaintiffs, however, cited the District of Nevada's October 3, 2012, order in which the court denied the Government's second motion to dismiss, in which it argued that an intervening change in the law required dismissal. ECF No. 30 at 7 (citing *Abila,* 2012 U.S. Dist. LEXIS 143204, at *10-11 (D. Nev. Oct. 3, 2012)). As noted above, however, the Government in this case argues that *Abila* is factually distinguishable, and the two *Abila* decisions reflect the same fact pattern.

[11] In addition to alleging negligence by Dr. Franchini arising out of his unsuccessful 2005 Elmslie procedure, Plaintiff Myrick also alleges negligence on the part of other unnamed medical personnel at the VA who treated him through at least 2012 and "continually failed to recognize" the nerve injury that Dr. Franchini caused in February 2005. 1:15-cv-00045-JDL, ECF No. 1 at 2, 4. The Government argues that it is clear from the facts set forth in Myrick's complaint that the sole act or omission giving rise to his injury was the February 2005 Elmslie procedure performed by Dr. Franchini, ECF No. 13 at 2, and that Myrick's administrative tort claim presented the February 2005 Elmslie procedure as the sole basis for his claim, *id.* at 3 (citing ECF No. 13-1 at 2). I addressed the inapplicability of the continuing negligent treatment doctrine in greater detail, *supra.*

*States,* 567 F.2d 1140, 1149 (1st Cir. 1977); *see also Anderson,* 669 F.3d at 164 ("[A] claimant has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances.") (internal quotation marks and citation omitted).

Thus, this is not a case in which a claimant submitted a timely federal administrative claim within the applicable state period of repose, but, because the administrative claim remained unresolved, was prevented from filing a civil action before the expiration of the period of repose. In those instances, complying with both the FTCA and a state statute of repose is impossible and, therefore, grounds for conflict preemption exist. *See, e.g., Cooper,* 2013 WL 6845988, at *5; *Blau,* 2013 WL 704762, at *2-3; *Abila,* 2011 WL 3444166, at *1, *5; *Zander,* 786 F. Supp. 2d at 882, 886. Here, in contrast, the plaintiffs' claims were time-barred before their federal administrative claims were submitted. Therefore, the plaintiffs have not shown that it would have been "physically impossible" for them to comply with both § 2902 and § 2401(b).

As substantive state law, § 2902 helps to set the parameters of FTCA jurisdiction. Because the three-year limitations period contained in § 2902 expired years ago, the plaintiffs have no cognizable state cause of action for negligence and, therefore, no viable FTCA claim. I now consider the plaintiffs' multiple arguments for why I should decline to apply the three-year period of repose to their cases notwithstanding this conclusion.

## C.   Other Reasons Asserted by the Plaintiffs for Not Applying 24 M.R.S.A. § 2902's Period of Repose

Following the hearing on the Government's motion conducted on August 6, 2015, I requested the parties to submit supplemental briefs regarding the following question: If § 2902 is a statute of repose, may a court decline to apply it based upon proof of fraudulent concealment, waiver, or for some other reason based in law or equity?  ECF No. 37.  The parties subsequently submitted briefs addressing whether (1) fraudulent concealment, (2) equitable estoppel, (3) judicial estoppel, and (4) waiver are bases for not applying the three-year period of repose in § 2902 in this case.[12]  I discuss each issue in turn:

### 1.   Fraudulent Concealment

None of the plaintiffs asserted claims for fraudulent concealment against the Government in their complaints.   They contend, however, that the limitations period contained in § 2902 does not apply to them because, they claim, the Government fraudulently concealed Dr. Franchini's negligence, and, therefore, the statutory tolling provision in 14 M.R.S.A. § 859 (2015) applies:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

If § 859 is deemed to apply, its six-year limitations period "starts to run when the existence of the cause of action or fraud is discovered or should have been discovered

---

[12]   The parties' supplemental briefs also addressed the continuing negligent treatment doctrine, which I conclude, above, does not apply.  *See* ECF No. 41; ECF No. 42; ECF No. 43.

by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966).

The plaintiffs assert that the VAMC was obligated to inform them of Dr. Franchini's negligence in a timely manner based on "the protocol mandated in [the VAMC] Handbook [§] 1004.08 regarding Disclosure of Adverse Events to Patients, p. 1 at 2(b) (10/2/12)[.]" ECF 41 at 3 n.1. The protocol explains: "While any such disclosure must be in keeping with applicable law, the explicit intent is to inform patients about substantive issues related to their care, and not to manage the institution's risk." *Id*. The plaintiffs assert that they each had "a good faith belief . . . that the government wronged them by dismissing Dr. Franchini in 2010, but not informing them that he provided them substandard medical care until" the period of repose lapsed in 2013. *Id*. at 3. They claim that the VAMC fraudulently concealed the fact of its investigation into Dr. Franchini from them for several years by inferring that the VAMC, before taking so serious a step as dismissing Dr. Franchini, was on notice of his negligence and investigated it.[13] ECF No. 43 at 3. Based on this, the plaintiffs contend that they "should be permitted to go forward with these cases to

---

[13] The plaintiffs have not articulated a specific reason why the VAMC was under a duty to report Dr. Franchini's administrative leave to them when it occurred, apart from a duty arising from a special relationship they claim to have had with the hospital as its patients. *See* ECF No. 30 at 2-3. I consider the plaintiffs' assertion of fraudulent concealment arising from the VAMC's "active concealment," and separate from any special relationship, based on allegations in the complaints indicating that the VAMC had adopted a policy requiring the "institutional disclosure of adverse event" to their patients, *see* 1:14-CV-399-JDL, ECF No. 1 at 7; 1:14-cv-503-JDL, ECF No. 1-2 at 1, which required the VAMC to address, among other things, the"[r]eason for any delay in the disclosure," *id*. It is arguable that a VAMC policy of notifying patients of adverse events in a timely manner may form the basis for a claim of active concealment where the VAMC had reason to know of a reportable adverse event, but it intentionally failed to disclose the event to its patient until the limitations period had expired.

discover information about the government's investigation and how the government's conduct caused and contributed to the harm they experienced."  ECF No. 41 at 3.

The Government argues that the plaintiffs are foreclosed from relying on 14 M.R.S.A. § 859 for three reasons.  First, the three-year statute of repose had already expired in the Prescott and Myrick cases by April 2010 when Dr. Franchini was placed on administrative leave.  ECF No. 42 at 4-5.  Second, the complaints are devoid of allegations of fraud and the only evidence that the plaintiffs point to in support of the theory is the time between when Dr. Franchini was placed on administrative leave and when the VA contacted them.  *Id.* at 5.  This, the Government argues, does not satisfy the heightened pleading requirements applicable to fraud, citing *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir. 1996).  *Id.*  Third, the VAMC, as a hospital, was not in a "special relationship" with the plaintiffs, and, under Maine law, had no obligation to tell its patients that their physician may have rendered substandard care.  *Id.* at 5-6 (quoting *Millett v. Dumais*, 365 A.2d 1038, 1041 (Me. 1976)).

There are two ways for a plaintiff to establish fraudulent concealment.  First, by identifying a "special relationship" that existed between the plaintiff and the defendant, such that the defendant had a duty to disclose the cause of action and breached that duty.  *Brawn v. Oral Surgery Assocs.,* 2003 ME 11, ¶ 22, 819 A.2d 1014 (quotation omitted).  If a special relationship exists, then "omission by silence may constitute the supplying of false information."  *Id.* ¶ 23 (quoting *Glynn v. Atl. Seaboard Corp.,* 1999 ME 53, ¶ 12, 728 A.2d 117) (quotation marks omitted)).  "[I]n such a relationship, where the defendant knows particular facts and does not disclose

them causing the plaintiff to rely on those facts, an *inference* of fraud is appropriate." *Id.*

Second, a plaintiff may "establish that defendants *actively concealed* material facts from her and that she *relied on* their acts and statements to her detriment[.]" *Id.* ¶ 22 (emphasis added) (quotation omitted).  Invoking § 859 on the basis of active concealment "requires no less than the demonstration of the defendant's actual knowledge of the concealed fact and the fraudulent intent or design of preventing its discovery by the plaintiff."  *Bangor Water Dist. v. Malcolm Pirnie Eng'rs,* 534 A.2d 1326, 1329 (Me. 1988).

A plaintiff claiming fraudulent concealment, either on the basis of a special relationship or by active concealment, must allege that the fraud took place within the three-year period of repose, because "[a]fter a cause of action expires . . . no amount of subsequent concealment can revitalize an already stale claim."  *Brawn,* 2003 ME 11, ¶ 25, 819 A.2d 1014.

**(a)  Special Relationship**

The plaintiffs contend that they have established a "special relationship" for purposes of § 859 on the basis of the doctor-patient relationship which existed between themselves and Dr. Franchini.  ECF No. 43 at 3-5 (quoting *Millett,* 365 A.2d at 1041).  Yet, the plaintiffs allege that it was the VAMC which engaged in fraudulent concealment, not Dr. Franchini.  *See* ECF No. 41 at 3; ECF No. 43 at 3.[14]  The

---

[14] In a footnote contained in their consolidated reply brief, the plaintiffs assert that a hospital commits fraudulent concealment when it knows of its "agents' negligence" yet fails to disclose it.  ECF No. 43 at 5 n.5.  However, they cite no legal authority for support and do not elaborate further.

Government, in contrast, focuses upon the parties' hospital-patient relationship, arguing that it did not give rise to a duty to disclose malpractice.  ECF No. 42 at 5-6.

Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 2012 ME 43, ¶ 10, 40 A.3d 971 (quotation omitted).  Only relationships "in which there exists a great disparity of position and influence between the parties" qualify as a special relationship. *Dragomir v. Spring Harbor Hosp.,* 2009 ME 51, ¶ 19, 970 A.2d 310 (quoting *Fortin v. Roman Catholic Bishop of Portland,* 2005 ME 57, ¶¶ 34, 37, 871 A.2d 1208) (quotation marks omitted)).

The Maine Law Court has found that such disparities exist between a hospital and patient "in cases involving highly vulnerable patients who were sexually abused while receiving mental health treatment," *id.* ¶ 20, or in any relationship involving "those who are required by law to take physical custody of another or who voluntarily do so 'such as to deprive the other of his normal opportunities for protection[,]'" *id.* ¶ 18 (quoting Restatement (Second) of Torts § 314A).  Because such circumstances are not alleged in this case, the plaintiffs' assertion of a special relationship based upon nothing more than a hospital-patient relationship must fail.[15]

---

[15]  Both parties cite to and quote the Maine Law Court's opinion in *Millett v. Dumais,* 365 A.2d 1038, 1041 (Me. 1976). In *Millett,* the court held that: "Given the fact that the relationship between physician and patient is one of great confidence and trust, thus imposing a duty to disclose all pertinent facts to the patient, it does not necessarily follow that this obligation to disclose must include the peripheral possibilities of misjudgment and negligence." 365 A.2d at 1041.  *Millett* thus stands for the proposition that fraudulent concealment occurs where a doctor fails to disclose specific acts of negligence, and not where a doctor fails to disclose the mere *possibility* of negligence.  *See id.*  Because the Maine Law

### (b) Active Concealment

The plaintiffs claim to have "a good faith belief . . . that the government wronged them by dismissing Dr. Franchini in 2010, but not informing them that he provided them substandard medical care until" the period of repose lapsed in 2013. ECF No. 41 at 3.  The plaintiffs also claim that the VAMC concealed the fact of its investigation into Franchini for several years, inferring that before the VAMC would have taken so serious a step as suspending Dr. Franchini, it must have been on notice of his negligence and investigated it.  ECF No. 43 at 3.

To establish fraudulent concealment, there must be a "*demonstration* of the defendant's actual knowledge of the concealed fact and the fraudulent intent or design of preventing its discovery by the plaintiff."  *Bangor Water Dist.,* 534 A.2d at 1329 (emphasis added); *see also Joca-Roca Real Estate, LLC v. Brennan,* 2015 WL 6870057, at *15-16 (D. Me. Nov. 6, 2015).   This case is, however, at the pleadings stage; no discovery has been performed and there is no evidentiary record from which I may judge whether the plaintiffs can ultimately demonstrate the required elements of actual knowledge and fraudulent intent.  The question, therefore, is whether the plaintiffs' allegations are sufficient to satisfy Rule 9(b)'s heightened pleading requirement that in alleging fraud "a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  Although the Government correctly observes that the plaintiffs failed to allege fraud in their complaints, the

---

Court was focused solely upon the doctor-patient relationship and not the hospital-patient relationship, and because the plaintiffs accuse the hospital rather than the doctor of engaging in fraudulent concealment, *Millett* does not address the question of whether the plaintiffs and the hospital were in a special relationship.

issue of fraudulent concealment arose in this case not as a claim upon which the plaintiffs seek relief, but instead in connection with the Government's motion to dismiss the complaints based on the statute of repose contained in § 2902, ECF No. 28. Under these circumstances, it is appropriate for me to consider the allegations made by the plaintiffs in response to the Government's motion. *See Fernández-Vargas v. Pfizer,* 522 F.3d 55, 63 (1st Cir. 2008).

Conclusory allegations of fraud cannot satisfy the requirements of Rule 9(b). *Doyle*, 103 F.3d at 194; *see also In re Compact Disc Minimum Advert. Price Antitrust Litig.,* 138 F. Supp. 2d 25, 28-29 (D. Me. 2001) (citing *J. Geils Band Emp't Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1255 (1st Cir. 1996)). Rather, "Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *Doyle,* 103 F.3d at 194 (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-229 (1st Cir. 1980) (*superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). The information alleged in the plaintiffs' pleadings and memoranda of law appears to satisfy this standard. The plaintiffs have specified the relevant dates of their treatments by Dr. Franchini, the date in 2010 that he was placed on administrative leave, and the dates in 2013 when each plaintiff was first notified by the VAMC of Dr. Franchini's allegedly substandard care. 1:14-cv-00399, ECF No. 1 at 3-5, ECF No. 43 at 3 (consolidated reply brief stating that Franchini was placed on leave on April 28, 2010); 1:14-cv-00503, ECF No. 1 at 4-6; 1:14-cv-00551, ECF No. 1 at 3-6; 1:15-cv-00045, ECF No. 1 at 2-3. The plaintiffs also infer that Dr. Franchini was

placed on administrative leave in 2010 because of his negligent treatment of the plaintiffs and that the VAMC concealed the same from the plaintiffs for approximately three years. *See* ECF No. 43 at 3. It is, of course, also possible that Dr. Franchini was suspended based on his treatment of a patient or patients other than the plaintiffs, or for a reason unrelated to the quality of his care of patients. The plaintiffs note, however, that they were prevented from performing any discovery in this case pursuant to the Court's order of May 11, 2015, which stayed discovery pending the Court's resolution of the defendant's motion to dismiss. *Id.* at 2. The plaintiffs now request that they be permitted to conduct discovery on the issue of fraudulent concealment. *See* ECF No. 41 at 4.

Because the issue of fraudulent concealment was generated in relation to the Government's motion to dismiss, fairness requires that the plaintiffs be afforded the opportunity to amend their complaints accordingly and to perform limited discovery restricted to that issue. Information regarding (1) when the VAMC became aware of information suggesting the possibility of Dr. Franchini's negligence or substandard care as it relates to each plaintiff, (2) when the VAMC should have reported that information to each plaintiff in accordance with its adverse event disclosure policy, and (3) whether the VAMC fraudulently concealed that information from each plaintiff and intentionally revealed it only after the three-year period of repose had expired, is all information exclusively within the control of the VAMC. *See J.S. McCarthy, Co., Inc. v. Brausse Diecutting & Converting Equipment, Inc.*, 340 F. Supp. 2d 54, 60 (D. Me. 2004) (permitting limited discovery where facts concerning "what [the defendant] knew, when it knew it, and whether it intended to deceive" the

35

plaintiff were within the exclusive control of the defendant). Further, Rule 9(b) specifically provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The VAMC's acknowledgement of Dr. Franchini's professional negligence as to these four plaintiffs, and its decision to place Dr. Franchini on administrative leave after the negligent acts, but years before it informed the plaintiffs of the same, make it reasonably possible that the plaintiffs' allegation could be factually substantiated—i.e, that the VAMC knew of, but failed to report, Dr. Franchini's negligence to these plaintiffs in 2010 or sooner. *See J.S. McCarthy, Co., Inc.,* 340 F. Supp. 2d at 60 (observing that "[i]n view of the potential that these allegations could be factually substantiated, an outright dismissal would deny [the plaintiff] the opportunity to engage in discovery and the right to trial on the merits."). Accordingly, I will defer ruling on this aspect of the Government's motion to dismiss and I will grant the plaintiffs leave to amend their complaints as to the issue of fraudulent concealment and to perform limited discovery regarding the same. *See Cloutier v. Dalkon Shield Claimants Trust,* 152 B.R. 1, 3-5 (D. Me. 1993) (stating that "the proper procedure" for a plaintiff who alleged that her cause of action did not accrue until its concealment came to light was for the plaintiff "to amend her complaint as soon as the defendant raised the statute of limitations defense[,]" and granting the plaintiff an enlargement of time to conduct limited discovery).

## 2. Equitable Estoppel

Courts invoke equitable estoppel when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other

36

will reply upon it and the other in reasonable reliance upon it acts to his or her detriment." *Phelps v. Fed. Emergency Mgmt. Agency,* 785 F.2d 13, 16 (1st Cir. 1986) (quoting Restatement (Second) of Torts § 894(1) (1977)). "[A] private individual asserting estoppel against the government has a very heavy burden to bear[.]" *Bateman v. F.D.I.C.,* 112 F. Supp. 2d 89, 94 (D. Mass. 2000) (quoting *Jones v. Dep't of Health & Human Servs.,* 843 F.2d 851, 853 (5th Cir. 1988)). In *Dasha*, 665 A.2d at 995, the Maine Law Court indicated that equitable estoppel may be applied under certain limited circumstances in connection with § 2902.

The plaintiffs argue that the Government effectively induced them *not* to take timely legal action by failing to inform them that it had discovered Dr. Franchini's negligence. ECF No. 43 at 6. Essentially, they argue that the VAMC's silence constituted a "definite misrepresentation of fact," although they cite no legal authority for support. *See id.* The Government maintains that equitable estoppel is inapplicable to the plaintiffs' cases because they failed to allege that either the VAMC or Dr. Franchini dissuaded them from taking legal action during the three-year period of repose. ECF No. 42 at 6-7 (citing *Dasha,* 665 A.2d at 995).

The plaintiffs' equitable estoppel argument must fail for two reasons. First, the plaintiffs do not contend that the VAMC made a definite misrepresentation of fact to them. Regardless of when the VAMC first knew of Dr. Franchini's negligence, its failure to immediately communicate that knowledge to the plaintiffs is not a definite misrepresentation of fact. *See Dickow v. United States,* 654 F.3d 144, 151-53 (1st Cir. 2011) (finding no affirmative misrepresentation by the IRS in not informing plaintiff that his request had been denied). Second, assuming for the sake of

37

argument that the VAMC's silence can be construed as an affirmative misrepresentation, "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty.,* 467 U.S. 51, 60 (1984). The First Circuit has repeatedly emphasized that application of equitable estoppel against the Government is disfavored "no matter how compelling the circumstances." *Phelps,* 785 F.2d at 16-17 (citing *Heckler,* 467 U.S. 51). Additionally, the Supreme Court "has declined to decide whether even 'affirmative misconduct' would estop the Government[.]" *Schweiker v. Hansen,* 450 U.S. 785, 788 (1981). Given this high bar, the facts that the plaintiffs assert do not establish an affirmative misrepresentation by the VAMC.

### 3.   Judicial Estoppel

The doctrine of judicial estoppel exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *State of N.H. v. State of Me.,* 532 U.S. 742, 749-50 (2001) (quotations and internal citations omitted). The Maine Law Court has explained the doctrine as follows:

> To judicially estop an entity from asserting a position in a subsequent legal action (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action.

*Linnehan Leasing v. State Tax Assessor,* 2006 ME 33, ¶ 25, 898 A.2d 408.

The plaintiffs argue that the VA took inconsistent positions in multiple cases because it settled administrative claims related to Dr. Franchini brought by other

veterans involving similar factual circumstances.  ECF No. 41 at 6-7.  Although those other claims did not result in lawsuits, the plaintiffs argue that they should nevertheless be considered "previous actions" for purposes of judicial estoppel because the other claimants were required to file administrative claims before they could file suit in a federal court.  *Id.* at 7.  The plaintiffs reason that the administrative claims "were in fact the beginnings of the litigation; thus, there is a 'previous action,' as the veterans whose claims settled were required by law to initiate an action in order to resolve it."  ECF No. 43 at 10 (citing 28 U.S.C. § 2675(a); *McNeil v. United States,* 508 U.S. 106 (1993)).

The plaintiffs' argument is unpersuasive.  *McNeil* does not support their assertion that administrative claims are "the beginnings of [] litigation" and thus satisfy the requirement of a "previous action."  *Id.*  Rather, the Supreme Court held in *McNeil* that exhaustion of the plaintiff's administrative remedies is a jurisdictional prerequisite to the filing of an action under the FTCA.  *McNeil,* 508 U.S. at 111-113.  The plaintiffs offer no other supporting authority for their argument.

The Government's receipt and settlement of administrative claims in instances in which no judicial proceedings were initiated are not "previous actions" for purposes of judicial estoppel.  I therefore conclude that judicial estoppel does not apply.

### 4.   **Waiver of Affirmative Defense**

The plaintiffs also contend that the Government waived its right to raise § 2902 as an affirmative defense because the VAMC made verbal and written representations to each plaintiff that they could bring claims against the Government.  ECF No. 41 at 5-6.  There has been no showing, however, that the

VAMC risk managers who met with the plaintiffs possessed the "power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision of Congress." *Dep't of Army v. Fed. Labor Relations Auth.,* 56 F.3d 273, 275 (D.C. Cir. 1995) (quotation and citations omitted). And as the Government points out, the plaintiffs have cited no legal authority for the proposition that a cause of action that has been extinguished by the passage of the period of repose is somehow reanimated simply because a risk manager provided a potential claimant with information about a claims process.  ECF No. 42 at 9-10. Waiver has not been demonstrated in this case.

### IV. CONCLUSION

I conclude that the Maine Health Security Act, 24 M.R.S.A. § 2902, is a statute of repose that is not preempted by the statute of limitations contained in the Federal Tort Claims Act, 28 U.S.C.A. § 2401(b).  I also conclude that with the possible exception of fraudulent concealment as recognized in 14 M.R.S.A. § 859, the remaining legal and equitable theories advanced by the plaintiffs do not bar the application of the three-year repose period contained in § 2902 to the plaintiffs' claims.

It is accordingly **ORDERED:**

1. Final ruling on the Government's motion to dismiss for lack of subject-matter jurisdiction (1:14-cv-00399-JDL, ECF No. 28; 1:14-cv-00503-JDL, ECF No. 16; 1:14-cv-00551-JDL, ECF No. 15; 1:15-cv-00045-JDL, ECF No. 13) is **DEFERRED** subject to the provisions that follow.

2.   The plaintiffs may file amended complaints so as to address the issue of fraudulent concealment no later than 14 days from the date of this order.

3. The plaintiffs may serve interrogatories and requests for production of documents on the issue of the alleged fraudulent concealment no later than 30 days from the date of this order.

4.   A case management conference shall be held on April 12, 2016, at 10:00 a.m.

**SO ORDERED.**

**Dated: February 2, 2016**

_____/s/ Jon D. Levy_____
**U.S. DISTRICT JUDGE**